IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**DORIS SANTOS-BERRIOS, <u>ET AL.</u>,**

    **Plaintiffs,**

    **v.**

**FRANCISCO JOGLAR-PESQUERA, <u>ET AL.</u>,**

    **Defendants.**

**CIVIL NO. 14-1145 (PAD)**

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Before the court are plaintiffs' "Motion for Reconsideration of Order at Docket No. 191" (Docket No. 193), and "Motion Requesting Order Instructing Defendants in Their Individual Capacities to Pay the Amounts Owed to Plaintiffs" (Docket No. 194), which defendants opposed, requesting in part that the court strike Docket Nos. 196 and 197 (Docket No. 204).  The motions require examination of the scope of the automatic stay set in Section 362(a) the Bankruptcy Code in connection with the Puerto Rico Oversight Management and Economic Stability Act, Pub. L. No. 114-187, 130 Stat. 549 (2016), 48 U.S.C. §§ 2110-2241 ("PROMESA"); dischargeability of debts under the Bankruptcy Code; novation; and use of extrinsic evidence to interpret contracts in conformity with Puerto Rico law.  For the reasons that follow, the motions for reconsideration and to strike are DENIED.  The motion for an order is HELD IN ABEYANCE pending production and evaluation of the documents mentioned below.

    **I.**    **BACKGROUND**

Plaintiffs are former employees of the Department of Health of the Commonwealth of Puerto Rico (Docket No. 1).  On February 21, 2014, they sued defendants in their official and

individual capacities, essentially complaining of political discrimination and retaliation (Docket No. 1). On January 25, 2017, the court dismissed their claims with prejudice pursuant to a confidential settlement agreement, retaining jurisdiction to enforce the terms of the agreement (Docket No. 151).

As set in the settlement agreement, the corresponding payments were due in 2 installments, by June 30, 2017 and December 30, 2017 (Docket No. 144-1, p. 4). On May 17, 2017, the Financial Oversight and Management Board for Puerto Rico filed a petition in the United States District Court for the District of Puerto Rico on behalf of the Commonwealth on the authority of Title III of PROMESA.[1] On January 3, 2018, plaintiffs filed a motion requesting that defendants deposit in court the second installment of the settlement amount with interest (Docket No. 174, p. 31).[2] On January 29, 2018, the Commonwealth filed a notice of automatic stay under PROMESA (Docket No. 177).[3]

On March 19, 2018, plaintiffs asked the court to order the Commonwealth to deposit the amount due, basically arguing that the order they sought was justified on equitable grounds. See, Plaintiffs' "Motion in Compliance" (Docket No. 187, p. 8)("[I]t would be inequitable to allow

---

[1] Congress enacted PROMESA "to address Puerto Rico's financial crisis." Peaje Investments v. García-Padilla, 845 F.3d 505, 509 (1st Cir. 2017). The statute creates a structure for exercising federal oversight over the fiscal affairs of U.S. territories, including the Commonwealth of Puerto Rico, with broad powers of budgetary and financial control; puts in place procedures for adjusting debts accumulated by the Puerto Rico government and its instrumentalities; and expedites approvals of key energy projects and other critical projects in Puerto Rico. See, United States v. Montalvo-Febus, 254 F.Supp.3d 319, 323 (D.P.R. 2017)(describing statute). It consists of seven titles, with Title III dealing with adjustment of debts. Id. at 323 & n. 7 (so noting). A Title III petition is akin to "a bankruptcy petition." In re Financial Oversight and Management Board for Puerto Rico, 899 F.3d 1, 6 (1st Cir. 2018)(so referring to Title III petition). Thus PROMESA makes certain provisions of the Bankruptcy Code applicable to Title III proceedings. Id. (mentioning as relevant, 11 U.S.C. §§ 362(a) and 922(a)).

[2] The first installment was paid on July 31, 2017 (Docket No. 166).

[3] Section 362 of the Bankruptcy Code ("Automatic Stay") applies to Title III proceedings under PROMESA. See, 48 U.S.C. § 2161(a)(incorporating provision).

defendants to avail themselves of the automatic stay for the second installment"). On March 29, 2018, the court rejected the argument, concluding that nothing in the present case fits situations where courts have applied equitable exceptions to the automatic stay under the Bankruptcy Code (Docket No. 191, p. 2). On April 26, 2018, plaintiffs moved for reconsideration and for an order instructing the individual defendants to pay the amount due (Docket Nos. 193 and 194).

## II.     DISCUSSION

A.   Plaintiffs' Motion for Reconsideration (Docket No. 193).

Plaintiffs allege that the PROMESA stay does not apply to collection of the amount owed pursuant to the settlement agreement, because the underlying obligation involved political discrimination and those claims fall under the "willful and malicious injury" exception to dischargeability under the Bankruptcy Code (Docket No. 193, pp. 4-5). Section 523(a)(6) of the Bankruptcy Code provides in part that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt- . . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

Discrimination actions fall within the scope of this provision. See, In re Porter, 375 B.R. 822, 826-828 (BAP 8th Cir. 2007), aff'd, 539 F.3d 889, 891 (8th Cir. 2008)(award of $150,000 in punitive damages, $60,000 for lost wages and benefits, and $50,000 for mental and emotional suffering obtained in employment retaliation and sexual harassment action against debtor excepted from discharge under 11 U.S.C. § 523(a)(6)); Carter v. Kidd, 194 WL 398022, *1 (D.Md. Jan. 27, 1994)(same in connection with debt arising out of plaintiff's judgment lien against debtor found liable for intentional infliction of emotional distress and sexual harassment in violation of Civil

Santos-Berrios, *et al.* v. Joglar-Pesquera, *et al*.
Civil No. 14-1145 (PAD)
Opinion and Order
Page 4

Rights Act of 1964). That those actions may not be dischargeable in bankruptcy does not, however, mean that the present case falls within those proscriptions.

The parties entered into a settlement agreement that released defendants from the claims that originated the action, creating new obligations under the agreement. The underlying claims are not synonymous with those derived from the agreement. See, Vázquez v. Salomon Smith Barney, 2003 WL 212242902, *1 (S.D.N.Y. May 29, 2003)(distinguishing between breach of settlement agreement and underlying race and sex discrimination claims that gave rise to it); Rojas v. Principi, 2006 WL 2038611,**2-4 (D.P.R. July 20, 2006)(noting that plaintiff's discrimination case was resolved via a settlement agreement and examining whether obligations set in the agreement were complied with). Thus, the contract novated the relationship between the parties, extinguishing the pre-contract situation and replacing it with the obligations set in the agreement.

In general, novation is the substitution of a new obligation for an existing obligation by the mutual agreement of the parties. See, Black's Law Dictionary (10th Ed. 2014)(defining term). It is recognized in Articles 1157 to 1161 of the Puerto Rico Civil Code, P.R Laws Ann. tit. 31 §§ 3241-3246. It may be extinctive or modificatory and may be accomplished by changing the subject(s), object and/or the principal conditions of the existing obligation. See, Web Serv. Grp., Ltd. v. Ramallo Bros. Printing, Inc., 336 F.Supp.2d 179, 182 (D.P.R. 2004)(discussing topic); I-II José Puig Brutau, *Fundamentos de Derecho Civil*, at 388-407 (4th ed. 1988)(similar). To extinguish an obligation, the parties must have explicitly agreed to the extinction, or there must be an absolute incompatibility between prior and subsequent obligations. See, Ramallo Bros. Printing, Inc., 336 F. Supp. 2d at 182 (explaining distinction).

Novation may operate in the context of settlement agreements, albeit novation and settlement are "different legal figures." García v. The Commonwealth Ins. Co., 118 D.P.R. 380

(1987), 18 P.R. Offic. Trans. 454, 464.  A settlement agreement consists of an agreement to avoid or end a suit, replacing uncertainty with certainty.  Id. at 464-465 (so noting).  It carries novation where it creates new rights instead of acknowledging or declaring them.  Id. at 465.  On that end, the novation is extinctive "when the parties willfully eliminate, substitute or modify –not only fix– the previous uncertain situation."  Id. at 466-467.  A release of claims with a new obligation to pay a sum certain creating a different relationship between the parties falls under this category.  Id. at 467-468 (pointing out that a substantially different obligation was born when, as relevant, by virtue of settlement the parties agreed to drop existing claims and replace them with the payment of a sum certain, giving rise to an extinctive novation).

The record shows the parties agreed that the settlement agreement would have the effect of dismissing all claims with prejudice, with plaintiffs releasing defendants from liability resulting from any of the facts and events which are the subject or may have been the subject of the complaint filed in the case of caption.  See, "Confidential Settlement Agreement" (Docket No. 144-1, pp. 1-3).  In this way, the underlying claims would be dismissed with prejudice (id. at p. 7), and were so dismissed, with the court retaining jurisdiction to enforce the settlement agreement (Docket No. 145) not, like occurred in Carter, 194 WL 398022 at *1, over a monetary award of damages on account of a finding of discrimination.  Further, in exchange, plaintiffs would receive the specific amount set in the agreement (Docket No. 144-1, p. 2).

In this light, not only did the settlement agreement extinguish the underlying claims –which no longer exist and cannot be transformed from potential to actual liability– but also created entirely new obligations, changing the relationship between the parties from one of litigants with uncertain obligations and prospect of recovery to one of contracting parties with fixed obligations,

including the obligation to pay a sum certain.[4] Under these circumstances, the payment obligation: (i) does not derive from a monetary award entered after adjudication of a discrimination action but from a contract; (ii) falls beyond the scope of Section 11 U.S.C. § 523(a)(6); and (iii) to the extent it imposes an obligation upon the Commonwealth, is subject to PROMESA.[5] Consequently, defendants' motion for reconsideration must be denied.

B. Plaintiffs' Motion Against Defendants in their Individual Capacity (Docket No. 194).

Plaintiffs request a payment order against the defendants in their individual capacity. The motion cannot be disposed of at this point. Where contracts are clear and unambiguous, their literal terms must be observed and applied. See, Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo Inc., 96 F.3d 10, 15-16 (1st Cir. 1996)(stating and applying rule to conclude that "extrinsic evidence of the parties' intent is inadmissible in the face of a clear and unambiguous contract term under Puerto Rico law").[6] If a contract is ambiguous, however, the intent of the parties at the time of contracting controls. See, Autogermana, Inc. v. BMW of North America, Inc., 38 F.Supp.3d

---

[4] Nevertheless, as discussed in the following Section, it is unclear whether the payment obligation is to be fulfilled by the Commonwealth out of its treasury or by the defendants in their individual or personal capacities out of their own pockets, for the parties may have intended the Commonwealth –not the individual defendants– to assume the payment obligation under the settlement agreement. If that were so, the Commonwealth would be the debtor against which plaintiffs must enforce the claim. And PROMESA provides for application of the automatic stay of Section 362 of the Bankruptcy Code in connection with debt-related litigation against the Puerto Rico government as part of Title III proceedings.

[5] Novation by settlement does not result in the discharge of fraud claims. Pursuant to 11 U.S.C. § 523(a)(2)(A), a monetary debt is nondischargeable "to the extent obtained by false pretenses, a false representation, or actual fraud." For that reason, as the court recognized in Los Alamos Nat'l Bank v. Martínez (In re Martínez), 2010 WL 3069978, *7 (Bankr. D.N.M. July 30, 2010), a "debt to a creditor under an agreement that settles or refinances a debt to that creditor attributable to fraud is nondischargeable, regardless of whether there was a novation extinguishing the tainted debt, unless the creditor specifically agreed to release any claims for fraud in connection with the settlement or refinance." To the extent plaintiffs argue that this rationale "should apply to defendants' debt to plaintiffs arising from claims of intentional political discrimination and retaliation" (Docket No. 193, p. 6), the underlying obligations in the present case do not involve fraud, and no cognizable fraud claim has been made in any of plaintiffs' filings regarding the settlement agreement.

[6] Even though the settlement agreement is silent on what law applies to its interpretation, the court applies Puerto Rico law because the agreement was executed in Puerto Rico to dispose of claims that originated in Puerto Rico.

230, 235-237 (D.P.R. 2014)(acknowledging principle).  Determination of the parties' intentions requires an examination of all relevant circumstances surrounding the contract's execution.  Id.  Extrinsic evidence may be considered in making that determination.  See, Yordan v. Burleigh Point, LTD, 552 F.Supp.2d 200, 204 (D.P.R. 2007)(so noting).

The settlement agreement here is ambiguous as to who must pay.  See, Paragraph 2a of the Agreement (stating that settlement amount is "to be paid to the Plaintiffs by the Commonwealth of Puerto Rico . . ."); *Cf.* with Paragraph 6 (stating that "Defendants shall pay the Settlement Amount . . .") (Docket No. 144-1, pp. 2, 4).  The ambiguity calls for extrinsic evidence to determine the parties' intentions.  See, Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 69 (1st Cir. 1995)("To consider extrinsic evidence . . . the court must first find the relevant terms of the agreement unclear").  And so to properly resolve this issue, by November 30, 2018, the parties shall file a Joint Motion with an Appendix including copy of all documents exchanged between them related to the negotiation, review and execution of the settlement agreement, counting emails and correspondence between the parties and between counsel and their clients – this latter category to be filed by separate entry to the extent it contains legal advice.  Likewise, they shall file copy of all documents, including forms, executed for payment, with letters and instructions therefor.  Once the court examines these documents, it shall issue a ruling, and if more information were necessary, determine what the subsequent steps should be.

C. Request to Strike (Docket No. 204)

Defendants request the court to strike Docket Nos. 196 and 197.  Those docket entries reflect orders for defendants to respond to plaintiffs' motions at Docket Nos. 193 and 194.  For

that reason, defendants' request must be denied.[7]

### III.  CONCLUSION

For the reasons stated**,** the motions for reconsideration (Docket No. 193) and to strike (Docket No. 204) are DENIED.  The motion for a payment order against the individual defendants (Docket No. 194) is HELD IN ABEYANCE pending production and evaluation of the documents referred to earlier, which must be produced not later than November 30, 2018.

**SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of November, 2018.

                                                          s/Pedro A. Delgado-Hernández
                                                          PEDRO A. DELGADO-HERNÁNDEZ
                                                          U.S. DISTRICT JUDGE

---

[7] The ruling remains even supposing defendants mistakenly mentioned Docket Nos. 196 and 187 instead of plaintiffs' motions at Docket Nos. 193 and 194.  Although defendants argue that plaintiffs' motions violate the automatic stay set in Section 362(a) of the Bankruptcy Code (Docket No. 204, pp. 3-5, 8), a remedy for a violation of the stay would have to be undertaken in the Title III proceeding.  See, In re Román-Pérez, 527 B.R. 844, 852 (Bankr. D.P.R. 2015)(willful violations of automatic stay must be brought in bankruptcy court).